I'm a little unclear in terms of the division of the time. We are dividing the time with Mr. Boyle, is that correct? Well, look, why don't you just not waste time worrying about it? Just go ahead and talk to him. I don't know how much time I have. Well, when we think we've heard enough of you, you see how tight we are here. I agree. You want me to tighten up on you? You want me to tighten up on you? Oh, no. You're wasting time. All right. Time's burning. Okay. And part of the reason I ask that is it's interesting, because I think the division of time between Mr. Holmes and Mr. Boyle points out the difficulty that we have brought out in the briefs, and that is we are being put together with Mr. Holmes, or Mr. Boyle, excuse me, and this is precisely the problem in the trial below. We were not at that trial, as you know. Mr. Holmes was barred from that trial. Nevertheless, when Mr. Boyle was found liable, in effect, the order of the court found Mr. Holmes liable as well, though he had not been there. He had been barred from appearing. Well, there were no damages, or there was no finding of liability. Your Honor, first, as we will argue, in this situation where it is the court itself that has violated the Fifth Amendment, we contend that the reputation plus test under the Paul D. Davis case need not be met, but even if it does, yes, there is. In the declaration of Mr. Holmes, he has indicated that as a direct result of that order, he lost a pending case, not a future case, not future goodwill, a pending case that was considerably lucrative to his office. We would also point out- Isn't that part of the business goodwill argument? I'm sorry? Isn't that part and parcel of the business goodwill argument? It's not part of the- when a specific showing has been made that business has been lost, that's not a loss of goodwill. That's a loss of financial income. That's not just a goodwill loss. But even turning, Your Honor- Do you have a case- what case most closely mirrors your argument that you're relying upon to support your view that this is something other than goodwill or business reputation being manifested? I'm just asking you- Yeah, my understanding- A case you're relying upon- I have never heard- To support your argument that this is an actionable wrong. Okay. In a situation like this- In the context of whether other lives be defamation by the court. I don't know that there would be a case because goodwill is defined as the reputation of the individual or the company in the community. Here, Mr. Holmes has testified, I lost a pending job. That's not goodwill. That's the loss of dollars. Okay, so tell me a case that has recognized that in the context of a defamation rubric that that's actionable. I'm asking you for a case that supports your argument. Well, I think- This goes beyond- Paul D. Davis. In that case, the reputation plus, what we contend here is the plus is the loss of dollars that resulted, not loss of goodwill. Okay, do you have a case that says the plus is loss of a business opportunity? In Paul D. Davis, the court went on at length that loss of employment is a plus. The court made very clear that where there has been a loss of employment- For a moment, Your Honor, and I can quote from that case. I'm quoting from the case. Page. One moment. I'm looking at the 1160. It talks about, does not establish a proposition. Reputation alone, apart from some more tangible interest, such as employment, is either liberty or property. The case goes on and on at length. And, indeed, we contend the case would have come out differently if the employer in that case, instead of threatening the employee with termination, had actually terminated that employee. But that was not done. So the majority in Paul relied upon that. The lack of loss of employment, the lack of any other measurable damage. Whereas, in the Constantino case, the court said it was sufficient that the individual there was barred from purchasing liquor, which was a future potential harm that hadn't even occurred. So here we have a harm that did, in fact, occur. The loss of a particular job. And going on to the goodwill, Your Honor, the cases that counsel has cited on the issue of goodwill, saying that goodwill were this one person involved in the business. Those were two state family law cases. And the results in those two cases make sense. And when you're dividing in a dissolution the property, the spouse that runs the business and who owns it will retain that goodwill. If you sell a – if you have a business with one individual, the ongoing business, of course, has goodwill. And that is a property right and is, indeed, often part of the purchase price of a business. So we contend, Your Honor, that we have met the reputation plus. But we would go farther here and say that Justice Brennan's comments in dissent in Paul, that certainly the enjoyment of one's good name and reputation has been recognized repeatedly in our cases as being among the most cherished of rights enjoyed by a free people. And, therefore, falling within the concept of personal liberty. May I ask you a question? Of course. Does the record reflect how the company that was going to – or individual that was going to hire Mr. Holmes was made aware of the court's – Mr. Holmes' declaration simply says he was advised that they were aware of it and that, as a result, he lost that consulting on a pending case that was already in existence. There is other – but the other examples are not before the record, so I can't get into them. But it does say that. I'd like to back up. Sure. District judge, Judge Hagerty – was it Judge Hagerty? I think so. The district judge ruled on the basis of timeliness and found that Mr. Holmes should have intervened earlier because he had reason to know that he would be implicated in this proceeding. And the judge also mentioned that Mr. Holmes' attorney had been there and then there was a prior lawsuit that had been involved him, so he should have had reason to believe. I just have two questions on that. One is, what's your argument that he didn't have reason to believe? And, two, as a practical matter – Sorry. I hate it when it does that. As a practical matter, Mr. Holmes had just settled a lawsuit with Mr. Sheets. Is that right? Exactly. So why would he want to be a party until he learned – Well, first of all, he doesn't want to be a party. Right. And that's not what we're asserting. But let me turn to your first question, as I understand it. Yes, much has been made about the fact that Mr. Holmes knew about that case. There's no question about that. We haven't denied it. Mr. Sheets had a second case pending against Mr. Holmes that involved exactly the same facts and theories that were in the case by Mr. Sheets, etc., against Mr. Boyle. That's right. But one thing I didn't understand. How was that allowed to happen? Was one in state court, one in federal court? Why weren't they both in federal court? Perhaps counsel knows better. As I understand it, the Sheets v. Boyle came out of the bankruptcy. Okay. The bankruptcy court retained jurisdiction on the Sheets v. – on the second case involving Mr. Holmes. That was going to come up for trial later. And, Judge Ferguson, no, I haven't diagrammed it, but I think I'll do it later. Yeah. So the point was, in any event, where we found ourselves, meaning Mr. Holmes, was the Boyle trial went ahead. That went for four days. Mr. Holmes was barred from that trial because he was a potential witness. We don't argue that Mr. Holmes knew that his name might come up in that trial because Mr. Sheets had a second case. The point is, and his lawyer was there. However, she was under orders not to talk to Mr. Holmes. And counsel has pointed out and said, well, after the trial she could have. No, not until a judgment had come down, because if there had been further proceedings and she had already talked, she would have been in violation of the order. But it's clear Mr. Holmes knew his name was going to come up. And we are not asking that the transcript be erased of all reference. What Mr. Holmes could rely on was that the trial was concluded. He then settled with Mr. Sheets with no admission of liability. Then out of the blue, in December of 2008, comes this ruling that says Mr. Holmes was complicit with Mr. Boyle, was defrauding his client, was defrauding Mr. Sheets, and Mr. Holmes had never had an opportunity in either case to put on that evidence. And if I can strike a hypothetical, and I emphasize that it is hypothetical. Did Mr. Holmes ever go to the trial judge and say, Your Honor, this information is incorrect? Vigorously. And what did the judge say? Basically, that was the point of the intervention. That was the point of the argument that the judge should have changed that order. Or at least, and that was the whole point of our attempt to intervene, to come in and say, Look, you have made a finding, a federal court has made a finding in violation of the most basic principles of due process, made a finding that could be destructive to the career, especially of a professional who has similar duties to those that we, as counsel and as judges have, without ever giving him a chance to come before the court to present his case. Let me ask, could this finding be used in a criminal prosecution or a prosecution by, I don't know, a state corporate body? I mean, I guess one thing I would, one of the concerns is I could, the fraud that was, you know, So is that risk over or not? Is that what, I'm sorry? Risk of criminal liability or exposure there or not? Absolutely. He has been, he has, there has been a finding. Now, it is, it's not in the judgment, but that order, that opinion has, in essence, the effect of a declaratory judgment that Mr. Holmes and his company committed fraud, committed accounting malpractice, violated rights to minority shareholders, and committed acts which have potential criminal liability, potential Are unethical, is there an accounting ethical, is there an ethical board? Absolutely. As Arthur Anderson has found out, there are ethical standards for accountants. And all of this, and that's the problem for Mr. Holmes, is that his competitors, even forgetting for a moment whether the accountancy board could now move in, competitors can now use that holding. A court has made a decision, it has held, that he violated his duties as an accountant. When he never got a chance, and they can Right, right. And the court recognized that, but I'm just, the relief, what you're asking us to do, and I know you've been a district court judge, so put yourself in that position for a minute, but what you're asking us to do is to tell the district court judge to rewrite his opinion. What we are seeking is, we do not seek a new trial, as counsel argues, we don't seek a new trial, we don't want to reopen the trial. What we are saying is we've been violated, denied due process. In many points of the opinion, the judge said, well, Mr. Boyle conspired with others, including Mr. Holmes. He didn't have to mention Holmes. We're saying that either an order saying that references to Mr. Holmes and his entities should be removed, which doesn't change Mr. Boyle's liability, nor require a retrial, or even that the order be sealed. And orders to the parties that it not be disclosed as to Mr. Holmes. So we're not, there's no prejudice here coming to the intervention issue. Right, does Mr. Sheets object to that? Does he object to the order being reopened? Well, Mr. Sheets has misperceived the intent of Mr. Holmes here. Mr. Holmes doesn't want to reopen the trial. Mr. Holmes has settled with Mr. Sheets. All Mr. Holmes wants is that he not be the subject and not have findings that have been entered against him that can impair his career and have impaired his career, going to Judge Wallace's question, to be allowed to stand and to be used by competitors and others to potentially cause continuing and ongoing harm to his business and to him. And it's already happening. And so the relief is, to me, as far as I can see, is not very difficult. It doesn't change the judgment. It doesn't change the order. We don't need another four-day trial. We don't want to go into the trial. Just advise, within order of the court, to simply either delete the reference. The legal basis. What's the legal basis? The legal basis is, I think it is the most fundamental legal basis that we can have in the jurisprudence that we are all bound by, and that is that the trial court made an order that is in flat violation of the Fifth Amendment here, due process. This isn't even a Fourteenth Amendment case, as counsel has tried to argue. This isn't the police putting out a flyer. This is a federal court saying, I am making findings against you, Mr. Holmes. You weren't here. You didn't put out evidence. The lawyer was there, right? She was there but not allowed to talk to him, and nor could she have anticipated, knowing that there was a trial coming up, that we would suddenly get this order finding against Mr. Holmes. So her presence there probably, frankly, if I were in that situation and knowing there was a trial that was going to be coming, I'm assuming she was there to see what the evidence was going to look like. But the point is, it was not a trial involving Mr. Holmes, and the settlement was reached before the judgment came out, or the order. And so suddenly, Mr. Holmes, who had settled and bought his piece with no admission of liability with Mr. Sheets, was in a position where now he's been found in effect by an order of the court to have committed all of those violations. That comes back to the fact of whether or not he had a protectable interest. And we contend he did at the very least, based upon his declaration, which I believe is either page 92 or 109 of the ER. But, Your Honor, I would go even farther here. It seems to me that where it is the court itself, a federal court, that has so fundamentally breached traditional notions of due process, of a right to be heard, and a right to have witnesses, which we have many cases. If we look at Justice Brennan's dissent in Paul and the Jenkins case in Constantino, that I would contend, and we would contend, that while we meet the standard in Paul of reputation plus, I would contend under those circumstances that this is so central to this process, that reputation should be enough when a court impugns in an order that you can't do anything about impugns your reputation. Now, I'm not sure. Am I out of time? I'm trying to think that any situation where courts have issued findings of fact and conclusions of law that make findings about third parties or absent people, absent persons, and in the course of just elaborating the rationale for the outcome of the case. I have seen cases, and I may very well have written some, where there's reference to third parties. I have never seen, and nobody here has cited, and that's why I made my comment to Judge Rawlinson, nobody has cited a case where a court has made such detailed findings against a non-party, where the court has said you hid evidence, the court has said you hid documents, the court has said you conspired in a fraud, where that person was not allowed to come into court and had no chance to defend him or herself against those claims. I have seen no case on that, and none has been cited. Are you really saying that here you have a case, with all the different parties and all the rest that's going on, and that Mr. Holmes had, and his name came up in the case. I'm sorry? His name came up in the case. Yes. Yeah. And then that case goes to a judgment. Right. And the judge produces his order. Right. And with no reason whatsoever says a lot of scurrilous things about Mr. Holmes. Okay. Your Honor? I'm sorry? And then Mr. Holmes, he gets wind of this, and he wants to come in and have those references to him stricken from the record. No. We parted company at the point where you indicated the judge with no reason. We parted company, as the judge said. Wasn't he part of this for a while? Who? The client? Was he? In the trial? No, no, go tell me. What are you going to tell me? Okay. The judge specifically said, and I think this is the most telling panel of all, when it came on for the motion to intervene, he pointed out both Mr. Sheets and Mr. Boyle were directing their case against Mr. Holmes, and he said there was no one there to protect you, Mr. Holmes. That's the problem. We know that evidence was going to come out against Mr. Holmes. Mr. Boyle and Mr. Sheets were pointing at Mr. Holmes. It was no one there, as the court found, to protect you. What you're saying, then, is if you analogy this to a criminal case. Right. Well, I suppose you don't even have to do that. You've got a plaintiff suing a defendant, and the defendant is arguing, no, I'm not involved in this transaction with you. You've got the wrong guy. The right guy is a fellow named Holmes, and Holmes is not a party to this lawsuit. And then when the court makes its ruling, the court makes its ruling against Holmes and not the defendant. Mr. Boyle, well, he did. Mr. Boyle, I assume, will argue this in a moment. There was a ruling against Mr. Boyle when Mr. Holmes was found to have acted in concert with him. Let me give an example. Let's assume, and this is hypothetical. I love the town of Portland, but I don't want to spend any time in this jail. To me, if my hypothetical or that I've tried to express is what happened, I think that was an outrage. We agree. It would be like in a criminal case where the defense says, I didn't murder so-and-so, somebody else did. And then the jury comes back with a verdict and convicts the other person who has not been indicted. And it would be, to be more analogous, it would be like a court trial, and there's an unindicted co-conspirator or a co-conspirator who's disposed of the case, and the judge trying the other alleged co-conspirator makes findings that the one who is not in the case, who was never at the trial, who is not a party to the trial, is indeed liable along with the co-conspirator. That happens all the time in criminal cases. I'm sorry? That happens all the time in criminal cases, that unindicted co-conspirators are mentioned in the evidence and findings are made by the judge, but they don't go to jail. I've never seen, I'm sorry. You've never seen a case where unindicted co-conspirators are discussed in the findings of the court? Not where they have found to be guilty in the findings. No, no. That's what happened here. He was found to be guilty. He was not found liable for anything. You're right. There was nothing in the judgment. You are absolutely correct, Judge Rawlings. But the order itself is in effect a declaratory judgment. It says he is liable. It says he was liable. Could Mr. Sheets take that judgment and enforce it against assets of Mr. Holmes? No, he's not in the judgment. Then he wasn't found liable for anything. What we are contending, Your Honor, is, I agree with you, he's not in the judgment. But he was contending he was smeared. That's what you're contending. He was smeared and he didn't have an opportunity and it came from out of the blue. Precisely. Well, okay. So that's why in response to Judge Rawlings' concerns, I said, A, that this case is different from any of the cases cited because it comes directly from the court making a finding here. This is not the police, like I said, distributing a banner. But certainly we do have the Paul B. Davis and other cases reputation plus. But I would contend this is closer to Jenkins and to Constantino where it is the ruling itself. What if the court that's ruling summarized evidence, and in summarizing that evidence, cast aspersions on your client but through the mouth of another defendant? And then the court concluded, well, given all of this, I'm not convinced beyond a reasonable doubt that the other guy is guilty unless the rest of us hang about there. In that situation, if it was shown, for example, to a competitor or whatever, it would merely be allegations from another party. This is a determination by the court that Mr. Holmes did conspire, that he did defraud Mr. Sheets, that he did. Based on the evidence. Pardon me? Based on the evidence. The judge didn't say that this was his independent determination after investigation. It's based on the evidence that was presented to the court. That is precisely true. And Mr. Holmes never got a chance to present any evidence. He was barred from the case. We don't dispute that the other side put on evidence. The court recognized that. It said both Mr. Sheets and Mr. Boyle were attacking Mr. Holmes, and there was no one there to protect Mr. Holmes. We agree with you. Based on the evidence before the court, it came to the conclusion it did. You're absolutely right. The problem is he wasn't there to put on his evidence. How can we strike that in the absence of any evidence from Mr. Holmes? That's the difficulty. Because if the district court judge relied on the evidence that was presented, how can we legally tell the district court judge you're not allowed to rely on that evidence because there was no evidence presented by Mr. Holmes? And that is the thrust of the case. The basis for it is the cases, numerous cases, under our Fifth Amendment and Fourteenth Amendment due process cases, that say you cannot make a finding against a party where that party has not had an opportunity to be present and to be heard. Sure, if I put on a case. It doesn't say you can't make a finding. You can't impose liability on the party. You would have us to police the language of judges and tell them what language can be included. That's a different thing. If there had been liability imposed, I agree with you completely. But what I'm gathering from your argument is you want us to police the language that the district court judge uses in making its judgment. The judgment is the important part. Well, the judgment is the important part in terms of other appeals, et cetera, which will be discussed by Messrs. Boyle and Mr. Sheets. But what I am contending, and what we're talking about here, going back to Jenkins, going back to Costano, where somebody has been out and, for example, flyers are put out that say this person was a drunk. Or in Paul D. Davis, flyers are put out that say this person was a shoplifter and he never was. There was no judgment that he was. And that's the point here. They were in the reputational rubric. Reputational. So that gets us to the issue of reputation, plus in Paul, which was not required in Costantino, nor indeed in Jenkins. And I agree with Justice Brennan that I think the attempt in Paul by the majority to distinguish those cases is really ineffective here, where it is the court that is making those findings which can be used in any context. So you're right. There is no judgment. We don't dispute that. We don't dispute there was evidence against Mr. Holmes. The trial court recognized that. We're saying Mr. Holmes never got to respond. It's ironic that in this case the judge isn't here to defend himself. As you and I both know, that's a tough situation. Why wouldn't judicial immunity come into play in this regard?  The court said its concern was it didn't want to turn the federal courts into a forum to try state court claims. Here, this isn't a state court claim. This is Fifth Amendment federal court, and Mr. Holmes has no remedy against the judge. You're right. There is no remedy for him. He can't sue the judge. I believe originally they were a party. There was a bankruptcy declared, and it all got separated. Holmes, we do not contend that Mr. Holmes. When you started this trial before Hagerty, Judge Hagerty. It was actually before the magistrate. I misspoke. I misspoke because it was actually a trial before the magistrate judge. The magistrate judge. The magistrate judge. You both, huh? Yes. Yeah. Right. When you, okay. When you, you're getting me excited. That's a good thing. This might be a Wednesday in order. This trial went on before Magistrate Judge Hubel. Yes, before Judge Hubel, yes. Was Holmes a party to that lawsuit? Originally? Not when the trial started, no. Was he ever a party to that lawsuit? Was he a named party? When the lawsuit began, he was not a party. When the lawsuit began, he was not a party. As I say, the trial began, he paid his way out, right? He what? It was a separate lawsuit. It was a separate lawsuit. He wound up with a separate lawsuit. He was never a party to this lawsuit. What? He was never a party to this lawsuit that we're talking about. Not at any of the relevant times he was not a party, no. What does that mean, not at any relevant time? Well, if he served. Was he ever a party to this lawsuit? I honestly, I don't know. I know that by the time it got to this point. You don't know. You diagrammed it, you would know. Let me do the diagram again. No, no. The point here. Take that seriously. I do take it seriously. Yeah, yeah. But the issue here is not what happened pre-trial. We're not contending he didn't know that evidence was going to be pointed against him. He knew that. He knew that Boyle and Sheets were going to, Mr. Boyle and Mr. Sheets, were going to be pointing evidence against him. But he had his own trial set. He had a separate trial set. The issues, they were bifurcated. Mr. Boyle went to trial first. Now, we don't contend that Mr. Holmes did not know there would be evidence at the trial by both of them to implicate him. But he was going to have his chance to put on his evidence in the trial separately, and he was barred from the first trial. So the trial with Mr. Boyle and Mr. Sheets, Mr. Holmes could not be there because he was listed as a witness. So we're not contending he didn't know something was going to be said against him. What happened in the other trial? The case settled. The Sheets versus Holmes case settled before the order came out. They settled with Sheets with no liability, no liability being found. So then this order comes out in December. Was that settlement in the records? Yes, it's in the records that there was a settlement prior to that. Settlement. Yes. It's even referenced by the court, which at one point said he didn't know that. Were the terms made public? I don't believe so, although they've been referenced, some of them have been referenced in the brief. Well, very rarely is liability admitted in a settlement. Of course. Right. So that doesn't tell us. So he's never had a chance to litigate his liability at this point because that was going to be done in the other case. He settled it not knowing there was going to be an order coming down, an opinion coming down saying that he, in fact, had committed malfeasance. So he had to know that this kind of stuff was going to come out in this trial. Right. He knew this. Right. And the same thing was going to come out in his trial where he would get a chance to put on the evidence against it. But the problem, as I see it, is that he knew Boyle and Sheets had every incentive to point at him. Right. But he didn't know that the magistrate judge would actually make a finding of fact that he conspired. In other words, from Mr. Holmes' standpoint, when this was bifurcated, he knew his trial was coming up. He could not put on his evidence in the trial we're on here. He was barred as a witness. He then knew he was going to have his chance with Mr. Sheets when his trial came up. But it never happened. They settled. But he settled that. But he didn't know this order was coming up. But even if he wasn't a witness, he wouldn't have the opportunity to put in evidence even if he weren't a witness. No, but they're complaining that he didn't intervene. He had no reason to intervene at that point. If he thought the court was going to come out and find against him, he could have sought intervention. But he had no reason to. He had a trial coming up on the same issues. There was no reason for him to intervene or do anything. He was barred by the court. Well, he knew, but he had to know that this other guy, what's his name again? Mr. Sheets or Mr. Boyle? Sheets and Boyle with an S. This other fellow, Sheets, was going to come in and cast aspersions on him. He knew that. He knew that he was going to be discussed in that case and a judgment might be entered against Mr. Boyle or not. Then the trial against Mr. Holmes by Mr. Sheets would proceed, except they settled before the order came out in the Sheets versus Boyle case. And Mr. Holmes finds out he's been found essentially, you're right, Your Honor, not in the judgment, but in an order. He's been found to have committed all of the complaints that Mr. Sheets has. And he was not a party to that case. All right. So that was that. And, you know, there's nothing clear-cut about all of this. Does the jury actually have any control over this at all? Not until the intervention, until post-trial. The matter was put before magistrate, which, of course, we had never agreed to because we weren't part of the case, part of the trial. So he didn't get it until we took an appeal from the ruling by the magistrate judge. Let's take it to when the magistrate judge made his report. Huh? Pardon me? When the magistrate judge made his report and recommendation to Judge Haggerty. Right? It was deemed not to be a report and recommendation. It was a judgment. And that's one of the reasons Judge Haggerty said, I'm not going to deal with this appeal. He said it was not timely because there was already an appeal to this Court. Right. The thing that I think Judge Patterson is asking is the magistrate judge could issue a judgment here and make findings of fact and conclusions of law because the Sheets versus Boyle party consented to him. Right. So they stipulated that he would act as the trial judge. Right. And Mr. Holmes had not obviously made that stipulation because he wasn't coming up for trial. So he had not at that point stipulated. And so the district judge who had control of the case basically said, look, in a very short order, it's already up on appeal. This is not an R&R. And under de novo review, I would come to the same review, the same in a very short order. So that's what happened vis-à-vis the district judge. But our point here is that while we recognize the concern that the Court has, for example, with Judge Rollinson, that there was no judgment, something like this, as Your Honor just said, and I think Your Honor was, Judge Ferguson was very correct in saying that if this is what happened, which we contend it is, it is outrageous that somebody can be impugned like this in an order of a court where they've never had a chance to come in and present their case before any tribunal. The fact that it's not a judgment doesn't change the impact that it has. But he certainly, you would think, anticipated that some of that stuff would come out. Right. And that's why we're not asking that the transcript be sanitized or sealed. We knew things were going to be said in the course of the hearing, yes. But what we didn't anticipate and what we couldn't anticipate was that rather than simply make findings against Mr. Boyle, who was before the Court and was represented, or at least participated in the trial, that the Court would go further and make findings against Mr. Holmes, who still had yet to have his case tried, and who had not been in that case and was not a party to that case and wasn't even allowed in the door. And so that is where the problem comes up. So Mr. Holmes got kind of whipsawed. He would have been allowed through the door if he hadn't settled. No, no, no, but not in this case. In his case, Sheets v. Holmes, yes, he settled that, and I think that you've handled both. But, yeah, he settled that case. But that was before he got heard about the order in this case. So, in effect, as I say, he got whipsawed. He never got to present his case and his facts and his evidence in either one before a fact finder, which is what we are contending is the violation of due process. And though it is not a judgment, the impact of that order, as any one of us, if we were accused of breaching of ethics, and I'm sure by opposing counsel, if there were a case where he was accused of betraying a client with someone else and the other person goes to trial first and he resolves the case and is determined not to have liability, but then a judge comes out and says, yes, he was complicit in trying to steal from his client or trying to undermine his client, I don't think he'd be taking the position he's taking now. I know I've gone over my time. Can I answer any other questions? Say Sheets made those statements in court proceedings. Yes. The same ones the judge did. Yes. Would you have a remedy against Sheets? No. Presumably he would have litigation immunity. And that's just evidence. In other words, if a competitor of Mr. Holmes saw that Mr. Sheets made those comments, that's of little consequence. That can be explained, yes, we had a falling out and he's made those comments. But when the court does it, when the court makes official findings that all of those things are true, that's a different animal. That goes to the heart of due process when you have never even gotten in the door. The court makes findings against someone who is not a party, not a witness, never offered any evidence. Okay? I'm sorry? All right. You're standing here? I'd just like to hear what the other side has to say. I'm sorry? I would just like to hear what the other side has to say. Of course. Okay. Well, we have to hear from Boyle. Boyle is on the phone. We have no contact with any murderers. Mr. Boyle. Mr. Boyle? You're right. Mr. Boyle has a separate address. This is Mike. Hi, Mr. Boyle. Somehow you got disconnected. I apologize. No, it's fine. I appreciate you calling me back. Okay. You want to say something? Are you speaking to me, Your Honor? Yes. Yes, if I could. Go ahead. So briefly, what my appeal is about is basically on a level of procedural error that I made as a pro se defendant, in which I did not include a declaration or affidavit stating why the evidence that I found after the trial was new. And that was an error on my part. I did ask for leave to amend, and the judge and the honorable magistrate, Buble, decided that he would not allow my Rule 59 motion because of that error. So I'm basically requesting and asking the appellate court to look at the Froman citing where it says that if justice so requires, leave can eventually be allowed, and that winning and losing shouldn't be based upon, I guess the word would be, proper procedure, which was, I guess, not valid on my part. However, I did produce as much evidence as I could after the trial in my motion that showed the trail back to the new piece of evidence. The other thing that made this kind of unique, and I guess sort of similar to what Mr. Holmes' attorney was speaking about, was that I had a second lawsuit against me from the bankruptcy estate, which began in early 2007. As I learned through my failure in my motion to dismiss, I learned that in Oregon you can't have derivative and non-derivative claims put against you at the same time. So what that meant was I had two very similar lawsuits against me, one by the bank of the state, one by Mr. Sheets. However, as I understand the idea of collateral estoppel, if you win in one case and the other case is the same, you can then take that entry or that judgment and apply it there. My case was kind of odd in that I kind of won my case. I settled my case based upon evidence found after the case against the bankruptcy court, but of course wasn't able to turn around and use that in a case that had already ended. So it was sort of a case of reverse collateral estoppel. So basically what I'm asking for is please allow me to produce and enter that evidence, a single piece of evidence which has the unique, I guess, quality of being a single piece of evidence that not only unravels the diversion case, which is what this case became about after four days of the trial. It originally was about interference with a statutory purchase option, then became about diversion. This unravels that theory or that claim, and then at the same time, shows that the valuation that was so heavily relied upon by the court and by Mr. Sheets is in effect at least in error of about a half a million dollars, if not more. Mr. Boyle? Yes. This is Judge Rawlinson. Yes, Your Honor. I wanted to ask you whether or not the district court also found that this information that you asserted was newly discovered was not new evidence because it was in the control of ETI all the time. Right, and that's why I said the uniqueness here was that, and I do believe they said that, and I think the uniqueness here of what he's understood is that ETI itself became under the control of the administrator or the bankruptcy administrator in early 2007, almost 18 months before the trial began. Right, Mr. Boyle. But my point is that the district court determined that you were the person who maintained the financial records before, and so this would not be newly discovered as to you because it would have been information that was under your control at the time you maintained the financial records. Right, but as I said in my rebuttal to Mr. Holmes' entry, that's just not the case. There's plenty of evidence showing that I was not the only one that had anything to do with the financial records. In fact, there were many, many professional firms, many individual people who were hired, many people who controlled this. But let's just do that to be true for a minute. If that was the case and that's what I was, let's just assume I was the single only person dealing with the financials from inception to close, that would mean that I then intentionally somehow attributed half a million dollars to somebody other than myself. That doesn't do me any good. So even if that was the case, that would be the most bizarre action on my part in the history of accounting. Okay. Well, let me ask you this. The evidence that you sought to introduce was of a loan that you made to the company, right? So the evidence actually, that's why I want to be clear. The evidence was specifically this. It's buried inside of the many thousands and thousands of journal entries that make up the company's general budget. It is a single entry found after trial that shows $500,000 of income from one of the company's clients. Somebody at some point mistook or misbooked a loan by me of $500,000 as regular income to the company. That piece of evidence, that knowledge was unknown to everybody. But here is the problem. If you were the person who actually made the loan of $500,000, how can that be newly discovered evidence? Because it wasn't known that it was booked as revenue from a customer. When I write the check and I hand it to the accountant, whatever happens after that portion is not up to me. And how it's actually booked has nothing to do with me on a day-to-day basis. So after these books were scoured over by many different experts, which is in the record of the trial, many different experts after Mr. Holmes, two different firms, nobody corrected that error. I don't know the origin of the error. I just know the error was found after the trial. And so once you look at that mistake, then everything comes to light. Because from our standpoint, we were looking at bank ledgers. We were looking at bank entries. That's not going to show you. All that shows you is a check number and an amount. Instead of you actually going to dig into the actual ledgers, it was actually put in the supporting documentation that the trustee controlled that you see where the actual error is. And once you find that, it unravels everything. That's why I was able to settle with them for nothing. Mr. Boyle, let me just try to understand what you're saying with newly discovered. You're not saying the loan was newly discovered, right? No. You're saying that you didn't discover until after the trial that, I guess, it was Mr. Holmes, your accountant, had mischaracterized the loan? Is that what you're saying? I have no idea. But what I'm saying is that the whole time I was under the impression that when I wrote the check and I handed it to my father that at some point I would have gotten credit for that. But what I only learned in late 2008 after going through the records with the trustees and the lawyers was that I never got credit for it. So the whole time I would never have thought in a billion years to think, oh, somewhere inside the book, that $500,000, I don't have credit for it. That would have never even crossed my mind. There was no point to ever think that because you have, besides Mr. Holmes, you have two other highly paid, highly professional firms that would have had to reconcile that. Mr. Boyle, you're saying that you were actually a creditor of ETI, the estate of ETI. Is that what you're saying? Absolutely. Absolutely. And when the bankruptcy court discovered that, they realized, oh, we're suing Mr. Boyle for millions of dollars, but in reality we owe him money. So we're just going to call it even. And that's why I was able to completely eradicate that second lawsuit, which is the same as Mr. Holmes' or Mr. Sheath's, but it happened after the fact. So now what I'm trying to do, again, I guess, is take that information and bring it back in. So, Mr. Boyle, so what you're saying is that the bankruptcy trustee accepted that that was a loan and credited you for it? Absolutely. Now, did you submit that evidence to the district court? It was part of my initial motion. I put in the chain of evidence that was found that I brought to the trustee's attorney after the fact. So what showed basically, I mean, the settlement is a matter of record. I mean, I pointed to it in my motion. You know, you can look at the case number in the bankruptcy court, and it's all a matter of record. It's all public. So, you know, I pointed back to that. The actual settlement itself did take place for a little, and my memory is a little hazy, but a few weeks, maybe months after I filed my motion to reopen. But as of now, as of this time, and again, I don't know the rules, so I may not be able to point to that, but it's a matter of public record at this point that I settled for just that information and that information only. Let me just ask you a question. Are you saying that somewhere along the line you earned $500,000 and that instead of that being credited to your account with a company, it was shown as an indebtedness by you to the company? Is that what you're saying? Actually, Your Honor, the way it actually worked is I told you. Well, I'm just asking you a simple question. Is that what you're saying? Not exactly. Not exactly. That's what it sounds to me, that you earned $500,000, then it showed up in the books as a liability instead of a plus for you, and that you found out about this after the trial. And that's kind of hard for me to believe unless $500,000 is like $5 to you. I don't understand why you wouldn't check it out and say, well, now am I credited with earning $500,000? This is why it's so important to understand that I always believed I was, but it wasn't until after that trial with the trustee's help that I learned that somebody had both that $500,000 as revenue from a customer. So up until that point, I never had any reason to think otherwise. Don't you ever look at the book and see what you had books of this company and see what you had coming to you? But that's what I'm trying to say. At all times, the information reported to me never showed this. I was always completely flushed. As far as I was concerned, when we would reconcile at the end of the year, I would either get something on my paycheck, I would get a payment. I was always completely flushed with the information that I had. But do you have access to ETI's financial records? I had access to reports. After Mr. Holmes came on board in early, I believe, 2002, my day-to-day involvement was over. So it was many, many years where my only, and I stopped becoming a shareholder in 2004. So my access was completely limited past that date, and I would get high-level reports and things of that nature. You get always asked, what does my, whatever you call it, account show? What does my ownership account show? What does the company owe me? And according to the reports that I was receiving, everything looked in line. It wasn't until later on that we learned that that. Did they give you an amount of money, a figure? They would have offsets because I would work, and then there would be money offset. It was never just a straight in-and-out transaction. I would loan. This wasn't the only loan that I had with the company. And I would also have sweat equity, and I would also have bonuses that were deferred. I sold my stock back to my father. It was many, many transactions. So again, like I said, this is multilayered. Over many years, you look at the report, it looks fine on the face. But there was never any reason for me to believe that somebody had booked revenue from a client. It didn't exist. It was ghost revenue. So the overall sum looked the same. The overall sum and amount looked fine. It's just they were attributed to the wrong people. So you couldn't say anything? You just couldn't tell one way or another? No, and that's what I'm saying. There were so many transactions going on, back and forth, and this and that, that $500,000 just got, in a sense, put out of your mind, forgot about. Yeah, it wouldn't have been forgotten about. But according to everything I was seeing, it looked in line. And what I'm saying is not just myself, but also many, many professionals went through these books and never, ever caught this error. So when you're paying hundreds of thousands of dollars to a client. Forget about the professionals. I'm talking about money you thought you had in your pocket. Right, and that's what I'm saying. It wasn't until the very end, the very, very end, when I'm dealing with the trustee, that it came to light, that it was like, no, Mr. Boyle, you're wrong. We don't owe you this money. And I said, well, here's my report that shows you do. They said, no, we don't. And then they, because they ran through every single book and entry and recalculated it. And that's when we found the error. So my report looks fine. What do you do for a living now? Right now I'm an independent consultant. What? An independent consultant. For what? For, I do, you know, like cellular phones and mobile devices. I consult for companies on applications of mobile devices. What kind of mobile devices? iPhones, BlackBerrys, home devices, smartphones, Samsung. If I've got a problem with BlackBerry, can I call you? Absolutely. Thank you. Thank you, Your Honor. Are you through? Yeah, I mean, unless you have any more questions, but that's basically it. No, I'm fine. Okay. All right. So now we'll hear from the other side. Here. Take your name again. Joel Watkins. I am the attorney for the appellee, Randall Sheets. I was also the attorney who tried the case, and I've been involved in this proceeding since 2005. All right. So let me ask you a question. I understand the procedural aspect of this case. So initially, Mr. – initially, ETI sued your client, right? Correct. And then you asserted a counterclaim. Correct. And then ETI went bankrupt. It did. There was a passage of quite a bit of time. Okay. But before this case went to trial, ETI went bankrupt. That's correct. All right. So then we had the bankruptcy estate. You still had your claims against the owners of ETI. That was freed from the bankruptcy estate to go to trial before the magistrate judge. That's correct. All right. So what was going on in bankruptcy was other claims were stayed against the estate, ETI, that you went to trial against the individual owners of ETI plus, I think, Cargill, and there's a couple other main defendants in that. Michael Boyle, John Cargill, at that point were the defendants in the case. Our claims were subject to the automatic stay in the ETI case, so we couldn't proceed against ETI. Our claims were limited to personal claims against the individual defendants. Any claims that were asserted derivatively on behalf of Mr. Sheets – by Mr. Sheets on behalf of Encompass or the property of the bankruptcy estate – and those derivative claims were pursued for the benefit of the creditors by the trustee. Now, Mr. Sheets' claim against the second lawsuit, Mr. Sheets' claim against Holmes, was that in the bankruptcy or not? It was not in the bankruptcy. It was filed in this district. All right. So I guess my first question is why weren't those two cases consolidated for trial? The reason that they weren't consolidated initially is that we were not completely aware of the extent of the problems relating to Mr. Holmes. And the initial case, going back to the actual counterclaim that I mentioned or that you confirmed the existence of in colloquy a moment ago, in that case, Sheets requested an opportunity to have his stock in the company valued at fair value. And in exercising that right, the claims against the individual defendants, the counterclaim defendants, were stayed as a matter of state law. As this case went on, it became increasingly apparent to my predecessor, Mitchell Brose, and then to me, that there were serious problems with the financial records of this company, not so much because we had actual information about that, but it was just the fact that no information was ever forthcoming. And we became increasingly concerned about the absence of that information into the spring of 2005 and into the early summer of 2006. At that point, a rupture occurred between Mr. Holmes and the Boyles that has not been repaired. The issue that arose at that point was that Mr. Holmes had withdrawn his financial reports that he had prepared in connection with the valuation of Sheets's shares. In other words, he was tasked in this proceeding as a CPA to come up with a value for Sheets's shares, and this was essentially to be done on a discounted cash flow basis. The minority interest would not be taken into account, and it would be valued at fair value rather than fair market value. What we waited for for well over a year was what were financials that we could rely on. In August of 2005, Mr. Holmes withdrew his engagement and withdrew those financial statements, and what came to light was that Mr. Boyle and Mr. Holmes had been involved in a debtor-creditor relationship and that a substantial amount of money had been transferred from an Encompass account directly into an account controlled by Mr. Holmes. And there were a series of loans that took place over a period of about a year, totaling $1.2 million that were lent by the Boyles, in part using Encompass funds, to Mr. Holmes. And that was the purpose was to create the competitor? The purpose was to create the competitor, Savant? Is that what they did with the funds? That had nothing to do with Savant at this point. One of the other delays related to the existence of Savant, which was an evidentiary hot potato for Encompass's then-appointed counsel, because the evidence that ultimately came out established that the Boyles and John Cargill were all acting cheek-by-jowl with one another to set up this company for the benefit of the shareholders, excluding Randy Sheets. However, that information was not available to us at that time. And our focus was on getting a value of the company and getting out of this lawsuit. Because we could see nothing but problems on the horizon. At the same time that Mr. Holmes withdrew, the attorneys for Encompass and the Boyles were either fired or they withdrew. So then... Were in a what? Fired or they withdrew. Oh, I thought you said they... I thought you talked about a fire, so... I'm sorry, that would be next. Okay, go ahead. The lawyers, those lawyers were gone. Holmes was gone. We brought in a brand new team, and they lasted about a year. The next team that came in, an attorney at a law firm here in Portland, again was representing Encompass and was again representing the Boyles. At that point, a new accounting firm came in, and it was going to prepare reviewed financial statements for the use of all the parties in connection with the valuation of this company. And this process also went on and on and on. It went on and on and on. I can't hear everything you're saying. Is this better? Yeah. Okay. All right. By the spring of 2006, what was clear was that there was another conflict of interest developing between the lawyer and client, and that firm ultimately was forced to withdraw, and it did so in the face of a motion to disqualify by us. The accounting firm at that point, also known as AKT, ultimately did prepare some financial reports. We went through the summer of 2006, and a new law firm came in to represent Encompass and Mike Boyle. That new law firm handled itself very capably and with great integrity. The reason that they withdrew was that they ran out of money to pay them. So what happened was that in late 2006 and early 2007, it was clear that Encompass was experiencing financial problems. It was financially an extremist. So at that point, we questioned whether Encompass would be able to actually purchase the shares of stock that Mr. Sheets held using its own funds, because if it was insolvent, using its own funds to purchase a shareholder's stock would be a fraudulent transfer, and it would violate essentially the basic corporate laws of the state of Oregon. We didn't have much time to dwell on that because then Encompass was put into Chapter 11. At that point, we went to the trustee and apprised the trustee of what we considered to be shenanigans involving the Boyles in connection with the management of this case. The trustee, with most of the information we had, moved for the appointment of a Chapter 11 trustee to take over the management of the company from the Boyles. The Chapter 11 trustee was appointed. Shortly after that, the same trustee converted the case to Chapter 7. So the question was, why weren't the two cases consolidated? Here we are. At this point, we had enough evidence based upon witnesses who had come forward, and at that point, we believed that we had a sufficient claims to cert against Mr. Holmes. We brought the suit against Mr. Holmes in the summer of 2007 alleging fiduciary duty claims, aiding and assisting breach of fiduciary duty by the Boyles, and a variety of other claims that hit at him in his capacity as a CPA. So you had received relief from the state to go against the individual from Encompass, right? We did. That took the better part of the summer. Okay. And so then you filed the lawsuit against Mr. Holmes. So wouldn't it have been more efficient to consolidate those two cases and get all of the evidence in one form? At that point, much of what we were finding out had occurred after the lawsuit began, and essentially the claims that we had against the Boyles related to events going back to 2001 and then up to the point in actually going forward from there. But that wouldn't prevent consolidation of the cases, would it? No. We did not consolidate the case. We did not move to consolidate the case. And we were wondering why. Why not? Because we were concerned that the case was going to bog down even more than it had. At the point that we brought the lawsuit against Holmes, this case had been pending for over three years. And Holmes wasn't part of the bankruptcy, right? There was nothing that stayed against him. Holmes wasn't part of the bankruptcy. He was just a student in his individual capacity. He was sued by Sheets, and he was sued by the bankruptcy trustee. Okay. So essentially the direct claims were pursued by Sheets. The derivative or creditors' claims were brought by the bankruptcy trustee. Okay. So you go to trial. You have your trial. You put on your evidence against the Boyles, both the Boyles and the Sheets, put on evidence of Holmes' role that Holmes isn't a party. And you had another case pending against Holmes at the same time. We had a case pending against Holmes at the same time. Am I correct in my understanding of this? So after you had your four days of trial, before the opinion came out in the trial against the Boyles, you settled with Holmes. That's correct. The trial was finished. We had five days of trial in August. Five days. The case was settled with Holmes. We met at a mediation in Portland in the end of October, and the settlement was consummated in December. So it was done. So the findings against Holmes are not essential to the judgment, which was essentially an evaluation of the value of Mr. Sheets' shares and a judgment entered against the Boyles for that value, because they personally found liable to pay that money to Sheets. I don't think that they are essential. I think that they represent the evidence that came into this case. Right. I'm getting to a different point. They're not essential to your judgment, right? I agree. Okay. Why don't you just agree to have the opinion sealed or have the findings that reference Holmes deleted? Why can't you just agree to that? It's not a published opinion. I guess what happened in this case is that once the judgment came in, we got a motion from Mr. Holmes wanting to modify the magistrate judge's opinion. Well, it's defining the fact that he has problems with it. I agree. But we did not see how we could get from here to there on the basis of the cases that they were relying on and the fact that out there we also had Mr. Boyle who was not inclined to cooperate. Well, Mr. Boyle is on the phone. Let's just ask him. Mr. Boyle? Are you still there? Yes, Your Honor. Let me ask you. Why don't you just stipulate to either putting these findings regarding Mr. Holmes under seal or having them stricken and submit the stipulation to the magistrate judge? What would be your objection to that? It doesn't at all affect the validity of the judgment, which is probably unenforceable anyway. Yes. I think I was in agreement when I read the first appeal. It said, get the alternative for a new trial. And obviously that's the same thing I was looking for. So I thought that me and Mr. Holmes were aligned at that point and I was more than willing to cooperate and see if we could reopen this and he could put on his information. I could get my information in there and we could get the complete record. I had no issue with that at all. Well, that's not what I'm asking you. I'm asking you, what's your objection to a stipulation where you just strike the portions of the findings that are not essential to the judgment that involve Mr. Holmes? I mean, if you have a legal issue with Mr. Holmes, I mean, you could sue him separately. I mean, it's not like he was the judge to owe you anything. And then we wouldn't be spending two hours hearing argument on this case. Right. Yeah, no, I mean, at the end of the day, I mean, at this point, this far removed, you know, I don't have an issue. You know, at the point initially my objection was mainly about the fact that if they were going to pick and choose which pieces to remove because they were based upon witness testimony, you know, at what point do we start removing, you know, other pieces as well? And at what point is that? But the problem is this is a non-party, and I think that's what's giving us pause. Even though it's a novel legal argument, it gives judges pause when there are findings of fact made against a person who doesn't have the opportunity to present evidence and witnesses on their own behalf. Right, so I understand. So I'm just wondering, couldn't you all just agree to do that with the stipulation in front of the magistrate judge? And I'm sure if all three parties agreed, it's not likely to be denied. Well, you don't have to agree. I don't want you to think that we are saying that you have to agree. You don't have to agree, and I'm not even saying that we're going to rule in your favor on it. I'm just trying to understand what everybody's positions are and what your interest would be in not agreeing. Our interest in this proceeding is trying to get to the end of it so that we can have a judgment that we can either satisfy or not satisfy. It's not final yet, of course. So that's our interest in this case. Well, don't you think that would be facilitated if the parties would agree that those findings regarding Mr. Holmes are nonessential to the litigation and agree that they can be sealed? I agree with that, unfortunately. It's taken a panel of the Court of Appeals to bring it. How are you going to seal them? When was this memorandum decision? When did it come down? It came down in December of 2008. Right. Were we publishing memorandum decisions at that time? It's not published. It's not published. It could be stricken. It could be sealed. It's not published, though. That's why I was curious as to how the competitors were made aware of the fact that these findings were made, if it's not published. I have no idea how the competitors were made aware. Sometimes people will self-publish those things. And that's why I was asking the question, because if Mr. Holmes informed people that this was done, they couldn't complain about it. I think at this point that what happened was there were a series of depositions that took place from December of 2007, where the lawyers for Holmes and lawyers for the rest of the parties participated. And John Cargill was deposed. The testimony that he gave implicated Mr. Holmes in the actions that were ultimately established in the findings by the district judge. We went to another level, another deposition in June of 2008. There was a trial in August of 2008. And I think that there's been a little rhetorical overstatement as to the scope of the district judge's order regarding keeping your mouth shut and not talking to witnesses. This was a standard order, and I had no understanding that it was going to expire, that it was going to continue until entry of judgment. My understanding was once the closing argument had been done, the witnesses had been questioned that that was the end of it. And at that point, Judge Hubel noted in his memorandum opinion that the counsel for Mr. Holmes had actually ordered the transcript of Mr. Cargill's testimony and had ordered also the testimony of Mr. Sheets, my client. Even so, I think that what they consider the reason to intervene was when the magistrate judge issued findings involving Holmes, who wasn't a party. And usually you wouldn't make those findings if the person wasn't there. Well, I don't know. I mean, it's very unusual procedurally, I think. But whether it rises to the level of a constitutional claim, I don't know. But I'm just wondering, isn't there a way? Sell it, sell it. We dismiss in order immediate issuance of the mandate. It's final. And you can go do whatever you want to do. I mean, I think that that would require some conversation among several of us outside of the presence of the courtroom. And I certainly think that that was the issue. Would it be worthwhile in this case to mediation? Well, it might be more worthwhile now that we've had some input from the bench. Well, I was. Well, how are you going to get the magistrate judge to agree? I don't know that the magistrate judge would disagree with the mediation at this point. The concerns that we had are basically the legal concerns about going forward. This entire case was premised upon the Becker or Beckham decision relating to the Ninth Circuit's decision based on modification of protective orders. And that seemed to me to be a pretty weak thread or basis for going forward with a modification of a district judge's opinion. And so our view of it was we were concerned because there was an absence of clear authority as to what was going to happen if he got into the case. Because the case law in this circuit is pretty clear that once a litigant has made a party, that party can defend, can assert additional claims, can conduct discoveries, can appeal. He didn't want a new trial. And you're consistently opposed to Mr. Boyle's motion. New trial, new appeal. No, patient, any of that. We weren't. Well, what you could do is if the three of you, through mediation, stipulated to something that the magistrate judge could approve or disapprove, that would work. If the magistrate judge disapproved it, then that's where you would stand. Is there any money in this? For the judgment, you mean? It's a $900,000 judgment. Oh, no, no. No money in the issue about the magistrate judge's language. There's no money. Is there money left? No. For anyone? No. Jar and dice versus jar and dice. No, I mean, is there any money around? Is there any money around? There's no money left to encompass. You've got a judgment against the Boyles. You've got a judgment against the Boyles for $900,000, right? That's correct. I read it here. Is it collectible? I don't know that I would want to share that information with Mr. Boyle right now, one way or the other. So why don't we order this? If no one objects, would the part of the appeal about the language, the findings as to Holmes, if that could be mediated, and then we could make a determination, we could, you know, mediate that part out and then roll on the merits of Mr. Boyle's newly discovered evidence issue, and I didn't fully understand what his precise claim was until today. I want to go back and look at the paper. And you could do it by telephone with the Ninth Circuit Mediation Office. There's two separate appeals, actually, so it would be really easy. You can see consolidated. Yeah.         I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. Mr. Boyle? Yes, Your Honor. Are you fine with that, too? Yes. You are? Okay. Yes. All right. I think we have some movement. Yeah. Okay. We'll probably issue an order deconsolidating the appeal, deferring submission, and sending this mediation, which you can schedule as soon as you want, by telephone with the Ninth Circuit Mediator who's in San Francisco. And you will probably rule on the other one. Yeah. This might be a good TV series. Yeah, but one of you who's creative ought to write this up. A creative one of you ought to write this up and sell it. Or the title of the series should be Next Time Diagram. Well, I'm going to give it to you. It's good. Hopefully, it's not. Wait. What? What do you mean by that? What do you mean by deferring the counsel to the Ninth Circuit? Your question would be so that you can answer it in a case where, again, they do not fight for the hassle of the jury. What was that? You ask him. He was never a party. I'm missing some words. No, he asked you whether or not Holmes was ever a party. Yeah. What would happen was the depositions and discovery were conducted in the same deposition. Each case was issues were addressed by all the parties involved. But there was no formal order consolidating these cases. So there was basically a de facto consolidation by the parties. Tell him what the accident was. It's pretty frightening. Tell Judge Frederickson about that. Did that happen to you? Where were you? Was it here in Portland? No, no, no. Oh. Where? Where? He lives in San Fernando Valley. He wants to know where. I just heard from him. Did they have an escalator there? What happened there? Still pending? Defense verdict. What? I don't know what you're saying. He can't hear you. He can't hear you. Defense verdict? Who was the defense attorney? The person that died. No, they died. It's all in the dialogue. Who was your lawyer? Well, what you got to do is lose about 50 pounds and everything. No, I mean. No, no, no. That's. Get yourself. Get yourself a trainer. Good trainer. No. You see this finger here? See that? That was crooked two days ago. See? Look at it now. China. No. The new processor has come out for dupertent. Dupertent. You know what that is? Injection. No, you couldn't have had them because. Because they just were approved by the. They work for you? We'll see. Dr. Miles Cone. It's Peter. China. Yeah. One of the world's great answers. I've had a lot of hand surgery. And this was. Unbelievable. Okay. Fascinating case. In the next bar review. Water. All right. Back to Encino. Thank you. All right. Recess. Thank you. Thank you. Thank you.
judges: Pregerson, Wardlaw, Rawlinson